UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-mj-02454-REID

UNITED STATES OF AMERICA

vs.

JERREN HOWARD

        Defendant.
_____/

GOVERNMENT'S MOTION FOR REVOCATION
OF MAGISTRATE JUDGE'S ORDER OF RELEASE

Pursuant to 18 U.S.C. § 3145, the United States of America, by and through the undersigned Assistant United States Attorney, hereby files this motion for revocation of the order of release by United States Magistrate Judge Jared M. Strauss of the Southern District of Florida as to defendant Jerren HOWARD, and the government requests a stay of the release order pending the Court's decision on the instant motion.

    **I.**    **PROCEDURAL HISTORY**

On March 6, 2023, a criminal complaint was signed by United States Magistrate Judge Lisette M. Reid, charged Michael DULFO and HOWARD with Arson/use of fire to commit a felony, in violation of Title 18, United States Code, Sections 844(h) and 2; Arson, in violation of Title 18, United States Code, Sections 844(i) and 2; Use of Interstate facilities in aid of racketeering, in violation of Title 18, United States Code, Sections 1952 and 2; and Stalking, in violation of Title 18, United States Code, Section 2261A and 2. Magistrate Judge Reid also signed arrest warrants for DULFO, HOWARD, and Edner ETIENNE, who was also charged in the complaint with Stalking. On March 7, 2024, HOWARD was arrested, and he made his initial appearance on Friday, March 8, 2024. The government sought pre-trial detention based upon risk

of flight and danger to the community, pursuant to Title 18, United States Code, Section 3142(f)(1)(A).

On March 13, 2024, a detention hearing was held before United States Magistrate Judge Jared M. Strauss.[1] The government requested pretrial detention based upon risk of flight and danger to the community, and a statutory rebuttable presumption applied under Title 18, United States Code, Section 3142(e)(3)(C). The government proceeded by factual proffer and Federal Bureau of Investigation (FBI) Task Force Officer Darrell Rodriguez testified before the court under cross-examination by defense counsel. Judge Strauss found that despite the rebuttable presumption, the government had not shown by clear and convincing evidence that the Defendant was a danger to the community, and the government had not met its burden beyond a preponderance of the evidence that HOWARD was a serious risk of flight. Judge Strauss ordered that HOWARD be released on a $250,000 personal surety bond, co-signed by his parents, with electronic monitoring and home detention with the exception of work, medical appointments, and legal visits with his attorney.

The government requested a stay of the Release Order for the government to appeal, pursuant to 18 U.S.C. §3145, and Judge Strauss stayed the Release Order until March 14, 2024, at 12 P.M.

## II.   FACTUAL BACKGROUND

On or about August 30, 2023, law enforcement responded to the address of VICTIM 1 in Miami-Dade County for a hit and run incident in which a Home Depot flatbed-style truck rammed into the side of VICTIM 1's vehicle as it pulled into the driveway of the residence at approximately

---

[1] The government does not yet have a copy of the transcript from the detention hearing.

2

4:12 PM. Home security video showed that the Home Depot truck appeared to arrive in the area of VICTIM 1's residence around 4:10 PM, before moving to park closer to the driveway. As VICTIM 1's vehicle pulled into the driveway, the Home Depot truck was put into reverse, circling around VICTIM 1's vehicle into the front yard at an increasing rate of speed to strike the passenger side of VICTIM 1's vehicle with the flatbed portion of the truck. The Home Depot truck then sped away. The Home Depot truck did not appear to have a license plate affixed to the rear of the vehicle.

Subsequent investigation revealed that a Home Depot truck was rented on the morning of August 30, 2023 at the Home Depot located in Coconut Grove. That truck was later reported stolen on September 4, 2023. Home Depot security camera footage revealed that the subject who rented the truck appeared to converse with individuals located in a Chevrolet Silverado pickup truck registered to DULFO. ETIENNE was seen leaving DULFO'S Silverado and entering the Home Depot after the subject who rented the truck, and returning to the Silverado while the subject was interacting with the occupants of DULFO's Silverado. The subject who rented the Home Depot truck then left the area in a Tesla without taking possession of the Home Depot truck, while DULFO's Silverado drove over to where the Home Depot trucks were kept. A short time later, DULFO's Silverado exited the Home Depot parking lot, followed by a Home Depot flatbed truck.

The Home Depot truck had a GPS device that indicated that it went to the downtown Miami area, where VICTIM 1 was attending a court proceeding. When VICTIM 1 left the downtown Miami area to return to VICTIM 1's residence, the Home Depot truck's location indicated that the Home Depot truck drove towards VICTIM 1's residence. License Plate Reader information showed that DULFO's Silverado also followed VICTIM 1's vehicle towards her residence. Security camera footage from a neighbor's house showed the driver of the Home Depot truck

3

appeared to be wearing the same clothing that ETIENNE was wearing in the Home Depot earlier that day, and the Home Depot truck was ultimately recovered by law enforcement a couple blocks from ETIENNE's residence with paint markings on the flatbed portion of the vehicle consistent with the collision with VICTIM 1's vehicle.

Law enforcement learned that prior to the August 30, 2023 hit and run incident, VICTIM 1's sister, VICTIM 2, had her vehicles burned on two occasions, July 2, 2022, and August 12, 2023. On both of those occasions, home security footage shows an individual wearing dark clothing pouring fluid on the vehicles from a canister before lighting them on fire. The vehicles were totaled as a result of the arsons. Security camera footage from nearby VICTIM 2's residence revealed that DULFO's Silverado was in the area of VICTIM 2's residence around the time of the August 12, 2023 arson.

Law enforcement obtained toll records and a search warrant for historical location information for DULFO's cellphone number ending in 9404. The toll records revealed that DULFO had numerous contacts with a phone used by HOWARD ending in 1029. Toll analysis, cellsite data, and iCloud search warrant returns inculpated HOWARD in each of the three major events associated with the stalking of VICITMS 1 and 2, and the associated protracted facilitating surveillance.

Law enforcement also obtained a search warrant for historical cellsite location information for HOWARD's 1029 phone. Those location records revealed that on the date of the July 2, 2022 arson at VICTIM 2's residence, DULFO's phone utilized cell towers in the vicinity of VICTIM 2's residence at 3:20 and 3:29 AM, and HOWARD's phone utilized cell towers in the vicinity of VICTIM 2's residence at approximately 3:12 AM. The arson occurred at VICTIM 2's residence at approximately 3:27 AM.

Location data associated with HOWARD also revealed use of cell tower(s) in the vicinity of VICTIM 2's address on or about August 12, 2023, the date of the second arson at VICTIM 2's Residence. The second arson occurred at approximately 3:34 AM. The search warrant of DULFO's iCloud accounts revealed that at approximately 12:35 AM, DULFO sent HOWARD two text messages stating, "Yoooo," and "I'm outside." Historical cellsite records indicate that HOWARD's phone was utilizing celltowers in the vicinity of VICTIM 2's residence between 1:30 AM and 2:30 AM. Historical cellsite records indicated that DULFO's phone was utilizing celltowers in the vicinity of VICTIM 2's residence at approximately 3:26 AM.

Likewise, historical cellsite location information again identified that HOWARD's phone utilized cell tower(s) in the vicinity of the Coconut Grove Home Depot on or about August 30, 2023, around the time that the Home Depot truck was rented that was used to commit the hit and run on VICTIM 1's vehicle. The search warrant of DULFO's iCloud accounts revealed a photograph of a slip of paper with VICTIM 1's address on it, as well as a Google Maps street-view of VICTIM 1's residence. Toll records on HOWARD's phone also revealed approximately forty-eight (48) phone contacts between HOWARD and a phone used by ETIENNE on August 30, 2023, the date of the hit-and-run. The toll records revealed that on August 30, 2023, between 10:26 AM and 4:42 PM, HOWARD's phone was in contact with ETIENNE'S phone for approximately ten (10) text messages and twenty-six (26) calls, including a call lasting approximately seventeen minutes at 4:42 PM. The hit-and-run occurred at approximately 4:12 PM on that day.

Law enforcement also learned from a reliable confidential human source that DULFO and HOWARD committed robberies of individuals who had just withdrawn money from ATM's or banks. This was corroborated by the search warrant of DULFO's iCloud account, which showed a number of text messages between HOWARD and DULFO, where they discuss following people

at banks.

Based upon this information, United States Magistrate Judge Lisette M. Reid signed a complaint charging DULFO, HOWARD, and ETIENNE with the aforementioned crimes, and arrest warrants were issued for all three individuals. At the time of his arrest, HOWARD refused to surrender, and only surrendered after agents were forced to deploy flash bangs into his home. A search of HOWARD's residence revealed the presence of two firearms and a number of cellphones. HOWARD did not make any statements to law enforcement, but DULFO waived his *Miranda* rights and made admissions that he and HOWARD were contracted to commit the two arsons and hit and run against VICTIMS 1 and 2 for money by someone working for the opposing party in the civil case that VICTIM 1 is a party to. ETIENNE also waived his *Miranda* rights and admitted to participating in the second arson and the hit-and-run after he was recruited to commit those acts by HOWARD.

### III.    PRE-TRIAL DETENTION HEARING

As stated above, the government requested pretrial detention based upon a risk of flight and danger to the community. The government submitted that there was a statutory rebuttable presumption in favor of detention, based upon 18 U.S.C. § 3142(e)(3)(C). The government proceeded by proffer, and FBI Task Force Officer Darrell Rodriguez was subjected to cross-examination. During the government's risk of flight argument, the government pointed out that HOWARD stated he did not have a passport, but Pretrial Services reported that he had taken a cruise to the Bahamas in the last few years, and that HOWARD admitted to using marijuana daily since 2007. HOWARD has numerous arrests since 2004, however, he only has one misdemeanor conviction for loitering/prowling in 2014. HOWARD had a capias warrant issued in May 2009 on a marijuana possession case, and the warrant was later withdrawn in August 2009. In 2012,

HOWARD was referred to pretrial diversion on a cannabis possession case, but that pretrial diversion was revoked approximately four months later. In March 2014, HOWARD was charged with Grand Theft in the 3rd Degree and Burglary of an unoccupied conveyance, and a capias warrant was issued when he failed to appear at calendar call in October 2014. HOWARD appeared on that warrant after he was arrested for the aforementioned Loitering/Prowling case in November 2014, and he received an adjudication withheld in that same month. The government also argued that HOWARD's refusal to comply with his arrest on the instant case demonstrated that he was a serious risk of flight.

As to danger to the community, the government relied on the facts of the case, the violent nature of the offenses, and the sustained nature of the stalking used to commit the three violent offenses.

HOWARD offered no evidence, but contended that his lengthy arrest record rebutted the presumption in favor of detention because he had only been convicted of one misdemeanor, his most recent case in January 2023 demonstrated that he successfully completed pretrial diversion and had only missed court on a few occasions. HOWARD also argued that the cross-examination of the Task Force Officer Rodriguez established that there was no video that could place HOWARD at the scene of any of the incidents.

Magistrate Judge Strauss then found that the government had not met its burden as to either risk of flight or danger to the community, and Magistrate Judge Strauss ordered a $250,000 personal surety bond, cosigned by HOWARD's parents, with electronic monitoring. The government then moved to have the release stayed pending an appeal to the District Court. The Magistrate Judge stayed the bond until Thursday, March 14, at 12:00 P.M., pending review of the government's Motion for Revocation of the Release Order by the District Court. The government

respectfully requests that this Court continue that stay until the Court can review this matter.

## IV. STANDARDS OF REVIEW

A court shall detain a defendant if it determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see United States v. Price*, 773 F.2d 1526, 1528 (11th Cir. 1985) (the policy of the Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant"). The Government has the burden of establishing a defendant is a risk of flight by a preponderance of the evidence or is a risk of danger by clear and convincing evidence. *See United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988). "Clear and convincing evidence" entails more than a preponderance of the evidence, but less than evidence establishing a fact beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 423-25 (1979). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). In a rebuttable presumption case, the defendant bears the burden of production – that is the burden of producing evidence to rebut the presumption. *United States v. Dawsey*, No. 3:23-CR-108-MCR-HTC, 2023 WL 8814199, at *5 (N.D. Fla. Dec. 20, 2023) *citing United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *also citing United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

Upon motion by the government, a district court is permitted to review a Magistrate Judge's release order. *See* 18 U.S.C. § 3145(a)(1). The district court must conduct a *de novo* review of the release decision. *See United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985); *United States v. Niles*, 874 F. Supp. 1372, 1374 (N.D. Ga. 1994) (citing *United States v. King*, 849 F.2d

8

485, 490 (11th Cir. 1988)). Review by the district court contemplates an "independent consideration of all facts properly before it." *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987) (citing *Hurtado*, 779 F.2d at 1480-81).

## V. ARGUMENT

In determining whether there are conditions of release that will reasonably assure the Defendant's appearance as required and safety of the community, the court must consider several factors, including the nature and circumstances of the offense charged; the weight of the evidence against the Defendant; the Defendant's history and characteristics; and the nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release. 18 U.S.C. § 3142(g). In examining the 18 U.S.C. § 3142(g) factors, it is clear that the factors weigh heavily in favor of detention based on risk of flight and danger to the community. Again, there is a statutory rebuttable presumption that there are no conditions to protect the community from the defendant or secure his return to court, pursuant to 18 U.S.C. § 3142(e)(3)(C).

### A. The nature and circumstances of the offense charged.

HOWARD participated in a stalking campaign that included using arson and a violent hit-and-run incident to terrorize VICTIMS 1 and 2 for over a year. The defendants' actions during the overt episodes are jarring, intentionally travelling to surveil the victim near a courthouse. The evidence demonstrates that DULFO and HOWARD conducted surveillance on VICTIMS 1 and 2, recruited other individuals to assist in their stalking campaign, and committed violent acts against VICTIMS 1 and 2. Moreover, these violent acts occurred at the residences of VICTIMS 1 and 2, making them feel unsafe in their own homes. The length of time and the severe violence of these acts, demonstrates that HOWARD is a danger to the community and particularly to VICTIMS 1 and 2.

The severity of the potential sentences in this case also weighs in favor of detention. The Defendant faces a maximum sentence of ten years' imprisonment for each count of arson under 18 U.S.C. § 844(i); a maximum sentence of twenty years' imprisonment for the use of an interstate facility in aid of racketeering activities under 18 U.S.C. § 1952; a maximum sentence of ten years for stalking under 18 U.S.C. §2261A; and a statutory minimum sentence of ten years, followed by a statutory minimum sentence of twenty years for the use of fire to commit a felony under 18 U.S.C. §844(h). *See United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1358 (M.D. Fla. 2003) ("the stronger the government's case, especially if the sentence will be severe, the greater a defendant's incentive to flee"); *United States v. Almasri*, Crim. A. No. H-07-155, 2007 WL 2964780, at * 1 (S.D.Tex. Oct. 10, 2007) (finding severity of potential ten-year sentences weighed in favor of detention).

## B. The weight of the evidence against the person.

The evidence against the defendant is strong. Historical cellsite information places HOWARD near the scene of the first arson mere minutes before it was committed at VICTIM 2's residence. Text message communications indicate that DULFO was waiting for HOWARD in the early morning hours prior to the second arson committed at VICTIM 2's residence, and historical cellsite information places HOWARD in the vicinity from approximately 1:00 AM to 2:30 AM before the arson occurred at 3:34 AM. Historical cellsite information places HOWARD in the vicinity of the Home Depot near the time the hit-and-run truck was rented on August 30, 2023, and there was a high volume of phone calls between HOWARD's phone and ETIENNE'S phone on that date, including a seventeen-minute phone call not long after ETIENNE hit VICTIM 1's vehicle. Additionally, a cooperating human sources, along with DULFO and ETIENNE in their post-*Miranda* admissions inculpate HOWARD as a member of the group committing these crimes,

with ETIENNE stating that HOWARD recruited him to participate. Lastly, the Defendant's arrest circumstances also weigh in favor of detention. The Defendant failed to surrender and barricade himself demonstrate consciousness of guilt evidence. Once inside agents located firearms which lawfully possessed by HOWARD, also constitute arguable tools in the stalking scheme.

These circumstances make plain that not only was the Defendant unduly relieved of his burden of production in this presumption case, but that the standard of evidence the United States was required to meet was elevated well beyond the clear and convincing standard. These errors in administering the Defendant's burden of production and the United States' proof obligation require reversal of the Magistrate Court's order.

### C. The history and characteristics of the defendant.

The defendant is a United States citizen with substantial ties to the Southern District of Florida. The government recognizes that HOWARD is a life-long resident in Miami-Dade County, with a number of family members in the area. However, HOWARD has only lived with his mother since October 2023, and he has a history of using marijuana on a daily basis since 2007. HOWARD has been arrested twenty-four times since 2004, and he has had arrest warrants issued on two occasions, including once when he failed to appear for a state calendar call. HOWARD has also been referred to pretrial diversion on a couple of occasions, and once that was revoked. In 2009, HOWARD was arrested for carrying a concealed weapon, and he used the alias of "Gerren Harold." Finally, on the date of his arrest, HOWARD refused to comply with the arresting officers, forcing them to use flashbang devices to force him to comply with exiting his mother's house.

### D. The nature and seriousness of the danger posed to individuals or the Community if the Defendant is released

HOWARD is charged with very serious offenses that involved a number of violent acts

towards VICTIMS 1 and 2. These violent acts occurred at both VICTIM 1 and 2's residences, and the arsons at VICTIM 2's residence occurred in the dead of night, when people were sleeping. HOWARD and DULFO have engaged in campaign to terrorize VICTIM 1 and 2 that has lasted over a year, the evidence demonstrates that HOWARD knows where VICTIM 2 lives. According to ETIENNE'S statement, HOWARD also recruited others to assist in carrying out these violent acts. Furthermore, the communications between DULFO and HOWARD that were recovered from DULFO's iCloud account demonstrates that HOWARD and DULFO have been engaged in robbing people who had just withdrawn money from ATMs and banks. This shows that HOWARD is engaged in a number of violent activities, and that there are no conditions that can reasonably assure the safety of VICTIM 1, VICTIM 2, or other members of the community.

Additionally, given HOWARD's history of drug use, failing to appear for court dates in the past, and his actions at the time of his arrest, the government submits that there is no condition or combination of conditions that would reasonably assure HOWARD's appearance in court.

## VII. CONCLUSION

For these reasons, the United States believes this defendant is a serious risk of flight by a preponderance of the evidence, and there are no conditions that will reasonably assure the defendant's appearance at trial, as required by 18 U.S.C. § 3142, and the defendant should be detained. The government also submits that the Defendant is a danger to the victims in this case and to the community by clear and convincing evidence, and that there are no conditions that would protect the community from the defendant.

The United States requests that this Court continue the stay of the Magistrate Judge's release order until a review by the Court can be completed.

        Respectfully submitted,

        MARKENZY LAPOINTE
        UNITED STATES ATTORNEY

By:   s/ Brian Dobbins
        BRIAN DOBBINS
        Assistant United States Attorney
        Court Id No. A5501182
        U.S. Attorney's Office - SDFL
        99 Northeast Fourth Street
        Miami, Florida 33132-2111
        Telephone: (305) 961-9304
        Facsimile: (305) 536-4656
        E-mail: Brian.Dobbins@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2024, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF

        s/ Brian Dobbins
        Brian Dobbins

Assistant United States Attorney